UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------- x

IN RE MDL 1720 DAMAGES CLASS
SETTLEMENT DISPUTES

REPORT AND
RECOMMENDATION
OF SPECIAL MASTER

---------------------------------------------------- x

1:24-MC-03415-BMC-JAM

IN RE MDL 1720 DAMAGES CLASS
SETTLEMENT DISPUTE
CONFLICT ID NUMBERS:

1:26-MC-03261-BMC-JAM

116745 (3124 ENTERPRISES, INC).

---------------------------------------------------- x

**Parties**:

Certificate Clearing Corporation ("CCC"), d/b/a Mitena Partners ("Mitena")

Recovery Services & Audit LLC ("RSA")

Rule 23(b)(3) Class Plaintiffs (the "Class")

**Counsel**:

Billy Stewart, VP of Business Development
Mitena Partners
404 South Wells Street, Suite 600
Chicago, IL 60607
(312) 970-1137
bstewart@mitenapartners.com
Representative of CCC d/b/a Mitena

Michael B. Kay, President
Recovery Services & Audit LLC
6738 Torybrooke Circle
West Bloomfield, MI 48323
(248) 310-9555
mbkay@comcast.net
Representative of RSA

Alexandra S. Bernay
Robbins Geller Rudman & Dowd LLP
655 Wests Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
xanb@rgrdlaw.com
Class Counsel

## I. Background

Mitena and RSA have both registered with the Class Administrator to claim a share of the proceeds of the settlement fund in *In re Payment Card Interchange Fee Merchant Discount Antitrust Litigation*, Dkt. no. 05-MD-1720 (E.D.N.Y.) ("*MDL 1720*") arising out of the payment card transactions of merchant 3124 Enterprises, Inc. d/b/a/ Parkway Custom Drycleaning ("Parkway").[1] Briefly stated, Mitena and RSA have both entered into agreements with Parkway which they contend authorizes them to register their claims. RSA entered into its agreement to serve as Parkway's filing agent in 2013. *See* Merchant Services Agreement dated Aug. 20, 2013. Later, in 2022, Parkway assigned its claim to CCC and appointed CCC to act as its agent in prosecuting the claim. *See* Assignment and Agency Agreement dated Nov. 2, 2022; Claims Assignment Agreement dated Dec. 9, 2022. Upon being made aware of the conflict, Parkway elected to authorize Mitena to register its claim. *See* Emails from Jon Simon ("Simon"), Owner

[1] Before submitting a claim to receive the settlement proceeds corresponding to the payment card transactions of a merchant member of the Rule 23(b)(3) Settlement Class (the "Class"), a party must first register that merchant's Taxpayer Identification Number ("TIN") with the Class Administrator. The registrant must provide proof that it is the owner (or authorized representative of the owner) of the claim corresponding to that merchant TIN. In the absence of supporting documentation, this requirement can also be satisfied by providing the Claimant ID and Control Number printed on the original prepopulated claim forms that were mailed to known class members. Once the registrant establishes such authority, the Class Administrator updates the registrant's status to "approved." If there is only one approved registrant for a given TIN, the registrant may submit a claim for that TIN. In cases where multiple parties have registered the same TIN, the Class Administrator designates the TIN as being in "conflict" and does not permit any registrant to submit a claim until the conflict is resolved.

of Parkway, dated Apr. 8, 2024, and July 3, 2025; Merchant Authorization Form signed by Simon dated Aug. 2, 2025. RSA contested that resolution based on its prior agreement with Parkway. *See* Emails from Michael Kay, President of RSA, dated July 9 and 13, 2025.

## II. Analysis

### A. The Claim's Owner Has the Power to Decide Who May File Its Claims

It is blackletter law that a principal generally has the power to revoke an agent's authority, regardless of the existence of any contract between the two under which that revocation may constitute a breach. *See*, *e.g.*, *United Ins. Co. v. World Wide Web*, 2011 WL 1870599, at *2-3 (E.D.N.Y. Apr. 27, 2011) ("a principal has an inviolate right to revoke its agency at any time[;]" if "in doing so, the principal violates its obligations to the agent under their contract, the agent retains the legal recourse of bringing a breach of contract claim") (citing cases), *report and recommendation adopted* 2011 WL 1843280 (E.D.N.Y. May 16, 2011); Restatement (Third) Of Agency § 3.06 (2006).[2]

Accordingly, as the owner and assignee of the relevant claim, Parkway and Mitena have the authority to choose an agent to register that claim with the Class Administrator and the Class Administrator must act in accord with that selection. Regardless of any contractual rights RSA may have as a result of its prior agreement with Parkway, it has no power to override Parkway's

[2] The general rule does not apply when the authority granted to the agent is a "power given as a security." *See*, *e.g.*, *Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 95 F.3d 291, 300 (3d Cir. 1996). However, a third-party filer's agreement to file a claim on behalf of a merchant in exchange for a portion of the merchant's recovery does not create a power given as a security; it creates no more than a revocable agency relationship. *See* Restatement (Third) Of Agency § 3.12, illus. 4 (2006) ("P develops a mechanical invention and engages A to patent the invention…. P authorizes A to file patent documents on P's behalf…. P agrees … to pay A half of P's profits. Even if A's authority is stated to be irrevocable, A does not hold a power given as security.")

choice to assign its claim to Mitena and Mitena as its agent. I therefore respectfully recommend that the Court permit Mitena, and not RSA, to file the claim at issue here.

B. The Court Should Not Adjudicate RSA's Contractual Rights

RSA, pointing to its 2013 agreement with Parkway, insists that "[j]ust because the client [Parkway] sold his claim, he still has to pay me." Email dated July 13, 2025. I express no view on the merits of that assertion. Instead, I respectfully recommend that the Court decline to adjudicate RSA's contractual rights against Parkway for the reasons discussed below.

1. The Court Does Not Have Exclusive Jurisdiction

When the Court granted final approval to the Superseding Settlement Agreement, ECF 7257-2 ("Settlement Agreement"), it "retain[ed] continuing jurisdiction in *MDL 1720* over the [parties to that litigation and class members] to implement, administer, consummate, and enforce the Superseding Settlement Agreement … including any disputes relating to, or arising out of … any claim for payment from the Class Settlement Cash Escrow Account." ECF 7818 (the "Final Judgment"[3]) ¶ 18. The Court further ordered that the parties and class members "irrevocably submit to the exclusive jurisdiction of this Court for resolution of any matter covered by the Superseding Settlement Agreement, [the Final] Judgment, or the applicability of the Superseding Settlement Agreement or this Rule 23(b)(3) Class Settlement Final Order and Judgment." *Id.* ¶ 19. Neither of those provisions applies to the potential dispute between RSA and Parkway or Mitena arising from the 2013 agreement and Parkway's appointment of Mitena as its agent.

[3] ECF 7818 is entitled "Final Approval Order." However, in the body of the document, the Court refers to it variously as "this Rule 23(b)(3) Class Settlement Order and Final Judgment" and "this Rule 23(b)(3) Class Settlement Final Order and Judgment." ECF 7818 ¶¶ 18, 19. For clarity and ease of reference, I will refer to the document as the "Final Judgment."

The jurisdiction that the Court "retains" in paragraph 18 is to "implement, administer, consummate, and enforce" the Settlement Agreement and the Final Judgment. If RSA asserts a claim against Parkway or Mitena based on alleged breach of the 2013 agreement, that claim will arguably be one "relating to, or arising from" a claim for settlement funds. But exercising jurisdiction over such a claim would do nothing to "implement, administer, consummate, [or] enforce" any provision in either the Settlement Agreement or the Final Judgment. In particular, the claim's resolution would have no effect on Parkway's right (which it has assigned to Mitena) to receive a portion of the settlement fund. Rather, it would affect only whether RSA is entitled to a portion of that recovery. Moreover, the Court prefaced its reservation of jurisdiction with the phrase, "as further provided in Paragraphs 65-68" of the Settlement Agreement. *Id.* ¶ 18. Those provisions are plainly focused on disputes that require interpretations of that agreement or of the Final Judgment:

> Without limiting the generality of the foregoing, it is hereby agreed that any suit, action, proceeding, or dispute of a Class Plaintiff or member of the Rule 23(b)(3) Settlement Class, *in which the provisions of this [Settlement Agreement] or the … Final Judgment are asserted as a ground for a defense, in whole or in part, to any claim or cause of action, or are otherwise raised as an objection,* constitutes a suit, action, proceeding, or dispute arising out of or relating to this Superseding and Amended Class Settlement Agreement or the Rule 23(b)(3) Class Settlement Order and Final Judgment.

Settlement Agreement ¶ 67 (emphasis, brackets, and ellipsis added). If RSA asserts a claim against Parkway or Mitena, its claim will necessarily rely on the terms of its 2013 agreement with Parkway – not anything in the Settlement Agreement or the Final Judgment. *See MDL 1720*, 348 F.R.D. 151, 172 (E.D.N.Y. 2024) (adopting identical reasoning by Judge Marutollo). And while it would be speculative to predict any defense arguments in such an action, I know of

no provision in the Settlement Agreement or the Final Judgment that absolves merchants of liability for breach of a contract with a non-party.[4]

Similarly, the Court's reservation of exclusive jurisdiction in Paragraph 19 is to resolve disputes "covered by" the Settlement Agreement or the Final Judgment. A claim against a Parkway or Mitena assertion a breach of the 2013 agreement is "covered by" neither document. Simply put, the relevant language of the Final Judgment demonstrates a concern that tribunals other than this Court might purport to interpret the Settlement Agreement or the Final Judgment and addresses that concern by asserting this Court's jurisdiction over such issues. Nothing in that language suggests a concern about how other courts might resolve disputes that arise between non-parties and merchants simply because the amount in dispute is a calculated as portion of the settlement fund paid to the merchant.

2. <u>The All Writs Act Does Not Confer Jurisdiction</u>

Non-parties seeking to have this Court resolve disputes arising from the distribution of funds under the Settlement Agreement have previously invoked the All Writs Act, 28 U.S.C. § 1651, as interpreted in *Visa Check*. *See*, *e.g.*, *MDL 1720*, 348 F.R.D. at 164 (E.D.N.Y. 2024). And to be sure, the Court in *Visa Check* wrote:

> Because [a third-party filer's] contracts with class members plainly affect the administration of the settlements and the distribution of the settlement funds, the All Writs Act authorizes the relief sought by Lead Counsel. "The power conferred

[4] There are of course cases in which an unscrupulous TPF takes unfair advantage of a merchant in the process of securing a representation agreement. In such circumstances the Court has clear authority to protect class members through appropriate injunctive relief. *MDL 1720*, 2014 WL 4966072, at *1; *see also id*. at *31-32 (explaining the source of the Court's authority to protect class members under Federal Rule of Civil Procedure 23(d) and the All Writs Act, 28 U.S.C. § 1651); *In re Visa Check/MasterMoney Antitrust Litigation*, 2006 WL 1025588, at *4 (E.D.N.Y. Mar. 31, 2006) ("*Visa Check*"). But in the absence of any suggestion in the record that RSA engaged in such misconduct, it would be premature and speculative to exercise jurisdiction over the routine contract enforcement action that RSA may or may not initiate. If RSA sues Parkway and Parkway asserts such a defense, the parties can seek removal and transfer as appropriate.

> by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice."

2006 WL 1025588, at *5

However, the context in which that passage appears plainly shows that the Court was empowered to make the contracts voidable as a means of protecting merchant class members from the predations of an unscrupulous TPF.

> Where, as here, a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary *to protect the settlement from threats by both parties and non-parties*.…
>
> … If a merchant chooses to sell its claim or pay someone else to process its claim, that is fine with the Court. It is also fine for [third party filers] to solicit merchants to use their claim processing or claim purchasing services. *The nature of the Court's interest is as simple as it is strong: the class members must not be misled*. Where false or misleading statements are used to solicit business from them, I have no intention to sit by and relegate them to a cause of action for breach of contract or fraud. To do otherwise – that is, *to say that I am powerless to take steps, both proactive and reactive, to protect each class member's interest in the settlement funds, even when I know they are being misled – would be an abdication of responsibility*. It would also erode the class members' and the public's respect for the settlements themselves, and for the process that produced them.

2006 WL 1025588, at *4 (citations omitted; ellipses and emphasis supplied).

A rule that a non-party's contract dispute with a merchant must be litigated in this Court would undermine, rather than advance, that protective interest. In this case, for example, it would force Parkway (which is located in Maryland) or Mitena (located in Chicago) to come to New York to defend itself. It would also postpone the distribution of Parkway's share of the settlement funds pending the outcome of that ancillary litigation. Regardless of the validity of a non-party's contract claim, a merchant facing such a choice might be forced as a practical matter to accede to the non-party's insistence on acting as the merchant's agent. Worse, in cases where

multiple TPFs claimed to have contracts with the same merchant (and the Class Administrator has identified many such cases in this settlement process), a merchant might be unable to avoid litigation in a distant court and the postponement of being paid the settlement funds to which it is entitled. Contrarily, if the Court declines to exercise jurisdiction over such contract claims, a party like RSA can still litigate its claims, but without imposing such burdens on merchants. *See MDL 1720*, 348 F.R.D. at 168-73 (adopting Judge Marutollo's similar analysis of the All Writs Act's application).

RSA is not a member of the settlement class in the context of the instant disputes. In seeking to act as Parkway's claim-filing agent, it does not – and cannot – assert a claim for any portion of the settlement fund without the principal's authorization. Nor does RSA have any claim on the protective role that empowers this Court to exercise jurisdiction over the kind of contract rights RSA asserts. It is instead a non-party that seeks either to serve as a merchant's agent, or, if the merchant revokes that agency, to seek relief from the merchant – not from the settlement fund. Nothing about RSA's status or its interests brings it within the scope of the Court's jurisdiction over the settlement in this case.

## III. Recommendation

For the reasons set forth above, I respectfully recommend that the Court direct the Class Administrator to process Mitena's registration of the claim associated with Parkway and to withdraw RSA's competing registration.

## IV. Objections

This Report and Recommendation will be served on all registrants who are parties to the instant conflict via the Court's ECF system, and the Class Administrator will also promptly provide a copy to all such registrants. Any interested party shall have 21 days from today's date

to file objections to the Special Master's report and recommendation with the Court. Such objections should be filed only on the dispute-specific miscellaneous docket (1:26-MC-03261-BMC-JAM). Any responses to objections may be filed within 21 days thereafter. No replies regarding objections shall be filed without the Court's permission. If any party objects to this Report and Recommendation, the evidence considered by the Special Master in making or recommending any findings of fact shall be filed on the dispute-specific miscellaneous docket. Such evidence may be filed under seal to protect confidentiality and the identities of claimants, as appropriate. The Court shall review the Special Master's reports and recommendations *de novo*. *See* Revised Order Appointing Special Master, 1:24-MC-03415-BMA-JAM, Doc. 3, ¶ 4.

Dated: August 12, 2026

*/s/ James Orenstein*
Special Master